UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARNER BROS. RECORDS INC., ET AL.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>JULIAN ROMERO,<br><br>　　　　Defendant.<br>_____/ | No. C-07-01451 JSW (JCS)<br><br>**REPORT AND RECOMMENDATION RE MOTION FOR ENTRY OF DEFAULT JUDGMENT BY THE COURT**<br>**[Docket No. 12]** |

## I.   INTRODUCTION

Plaintiffs, Warner Bros. Records Inc., Sony BMG Music Entertainment, BMG Music, Priority Records LLC, Virgin Records America, Inc., Elektra Entertainment Group Inc., and Interscope Records, bring a Motion for Entry of Default Judgment by the Court (the "Motion") in this copyright infringement action. Plaintiffs seek $7,500 in statutory damages, $480 (revised down from $550) in costs, and a permanent injunction. On May 24, 2007, the Clerk of the Court entered default against Defendant, Julian Romero. The Court held a hearing on the Motion on August 3, 2007. Plaintiffs filed supplemental materials in support of the Motion on August 6, 2007. Having considered Plaintiffs' Motion, the accompanying submissions and all other evidence of record, the Court recommends that the Motion be GRANTED.

## II.   BACKGROUND

Plaintiffs are recording companies bringing suit against Defendant under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.* ("Copyright Act"), for infringement of Plaintiffs' copyrighted sound recordings. *See* June 26, 2007 Declaration of Thomas Kerr In Further Support of Motion For Default Judgment Against Defendant Julian Romero ("Kerr Decl."), Ex. 1 (Complaint). Plaintiffs

contend that the Copyright Act grants each Plaintiff the exclusive right to reproduce and distribute to the public their respective copyrighted recordings ("Copyrighted Recordings"). Compl. ¶ 14. Plaintiffs also allege that they are, and at all relevant times have been, the copyright owners or licensees of exclusive rights under United States copyright with respect to the Copyrighted Recordings. Compl. ¶ 13. The Copyrighted Recordings at issue in this case include ten specified recordings listed in Exhibit A of the Complaint as well as certain recordings listed in Exhibit B of the Complaint.[1] Compl. ¶ 13, Exs. A-B. Plaintiffs provided copies of the copyright registrations for these songs following oral argument, in response to the Court's request. *See* Supplemental Declaration of Matthew Franklin Jaska in Further Support of Motion for Default Judgment Against Defendant Julian Romero ("Jaska Suppl. Decl."), Exs. B-K.

Plaintiffs allege that Defendant violated their copyrights by using, and continuing to use, an online media distribution system to download copyrighted recordings, to distribute them to the public, and/or make them available for distribution to others. Compl. ¶ 15; Kerr Decl. ¶ 3. Plaintiffs submitted a declaration detailing how they uncovered Defendant's alleged acts of copyright infringement. *See* Kerr Decl. ¶¶ 3-7. Specifically, in August 2004, Plaintiffs' investigator detected an individual using the KaZaA online media distribution system over a peer-to-peer file-sharing network. Kerr Decl. ¶ 3. The identified individual had 1,529 music files on his computer and was distributing the files to "millions of people" through the peer-to-peer network. *Id.* MediaSentry

---

[1] The ten Copyrighted Recordings listed in Exhibit A of the Complaint are:

- "Longview," on album "Dookie," by artist "Green Day" (SR# 185-457)
- "Ether," on album "Stillmatic," by artist "Nas" (SR# 305-698)
- "Sweet Lady," on album "Tyrese," by artist "Tyrese" (SR# 237-788)
- "All or Nothing," on album "O-Town," by artist "O-Town" (SR# 294-872)
- "Until We Rich," on album "War & Peace: Vol. 2," by artist "Ice Cube" (SR# 287-151)
- "Zero," on album, "Mellon Collie and the Infinite Sadness," by artist, "Smashing Pumpkins" (SR# 183-904)
- "Cold Day In July," on album "Fly," by artist "Dixie Chicks" (SR# 275-086)
- "Dreams," on album "Rumours," by artist "Fleetwood Mac" (N39857)
- "Keep On," on album "Bad As I Wanna B," by artist "MC Lyte" (SR# 225-726)
- "Housewife," on album "2001," by artist "Dr. Dre" (SR# 277-983).

Compl. ¶ 13 & Ex. A. The Copyrighted Recordings also include "certain of the sound recordings listed on Exhibit B," which is a list of recordings on *KazZaA*, an online media distribution system, under the username "Jay-R@kazaa." Compl., Ex. B.

2

obtained the alleged infringer's IP address as well as "screenshots" of the individual's "share" folder. Kerr Decl. ¶ 5. Through serving a subpoena on Pacific Bell Internet Services, the Internet Service Provider associated with the IP address, Plaintiffs identified Julian Romero as the user of the IP address committing the alleged acts of copyright infringement. Kerr Decl. ¶¶ 6-7. Plaintiffs found Defendant's current address by searching SmartLinx Person Summary Report through Lexis Nexis. Kerr Decl. ¶ 15. The SmartLinx Report generated an address of 350 E. Taylor Street, Apt. 1217, San Jose, California 95112, and is where Plaintiffs subsequently served Mr. Romero with the Summons and Complaint. Kerr Decl., Ex. 5; Docket No. 6 (Summons).

Upon discovering Defendant's identity, Plaintiffs' counsel sent Mr. Romero a letter informing him of the detection of copyright infringement and encouraged him to contact Plaintiffs' representatives to resolve the matter prior to the commencement of litigation. Kerr Decl. ¶ 8. Defendant never contacted Plaintiffs' representatives and Plaintiffs initiated this copyright infringement action on March 13, 2007. Kerr Decl. ¶ 9; Docket No. 1 (Complaint). Plaintiffs served the Summons and Complaint on Mr. Romero on April 12, 2007, at the Taylor Street address in San Jose, California (see above), by substitute service on Christina "Doe." Docket No. 6; Kerr Decl. ¶ 10. Defendant failed to answer or otherwise respond to the Complaint. Kerr Decl. ¶ 11. Plaintiffs sent a letter to Defendant on May 14, 2007, at the same address, explaining that he was in default and urging him to contact Plaintiffs' representatives to resolve the matter. Kerr Decl. ¶ 12, Ex. 2. On May 24, 2007, the Clerk of the Court entered default against Defendant. Docket No. 9 (Entry of Default). The Clerk notified Defendant of the entry of default on May 25, 2007. Docket No. 10 (Notification of Default).

On June 12, 2007, Plaintiffs filed this Motion seeking entry of default judgment and the following relief: 1) $7,500, constituting the minimum statutory amount of $750 for each of the ten acts of infringement alleged in Exhibit A of the Complaint; 2) $550 in costs pursuant to Section 505 of the Copyright Act (later revised down to $480); and 3) a permanent injunction pursuant to Section 502 of the Copyright Act. Mot. at 1. Plaintiffs' Motion does not seek an award of attorneys' fees.[2]

---

[2] In the Complaint, Plaintiffs requested "reasonable attorneys' fees incurred herein." Compl. ¶ 19. However, in their Motion, Plaintiffs explicitly forego this request. Mot. at 5 n.2.

3

On June 13, 2007, Judge White referred Plaintiffs' Motion to the undersigned magistrate judge for Report and Recommendation. *See* Docket No. 16.

Following oral argument, on August 6, 2007, Plaintiffs filed additional materials in response to the Court's request. *See* Jaska Suppl. Decl. & Exhibits. In particular, Plaintiffs provided an additional declaration addressing discrepancies in the moving papers regarding the cost of service of process, as well as copies of the copyright registrations for the ten songs at issue. Plaintiffs clarified that the cost of service of process was $130 rather than $200, as originally stated in the Motion.

## III.   ANALYSIS

### A.   Service of Process

The Court must "assess the adequacy of the service of process on the party against whom default is requested." *Bd. of Trustees of the N. Cal. Sheet Metal Workers v. Peters*, No. C-00-395 VRW, 2000 U.S. Dist. LEXIS 19065, at *2 (N.D. Cal. Jan. 2, 2001); *accord Hartford Fire Ins. Co. v. Cameron*, No. 05-4818 SC, 2006 WL 3646941, at *1 (N.D. Cal. Dec. 12, 2006). In this case, Plaintiffs served the Summons and Complaint on Mr. Romero by substituted service on Christina "Doe" in San Jose, California. *See* Docket No. 6; Kerr Decl. ¶ 10. The Summons describes Christina "Doe" as "a competent member of the household . . . at the dwelling house or usual place of abode of the party." Docket No. 6. To comply with the Federal Rules of Civil Procedure, service may be effected upon an individual "by leaving copies [of the summons and complaint] at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein . . . ." Fed. R. Civ. P. 4(e)(2). Accordingly, the Court concludes that service of process on Defendant was adequate.

### B.   Legal Standard for Awarding Default Judgment

Pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, the court may enter a default judgment where the clerk, under Rule 55(a), has previously entered the defendant's default based upon a failure to plead or otherwise defend an action. Fed. R. Civ. P. 55; *see PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002). The Court, however, may not enter a default judgment against an infant or incompetent person unless they are represented in the action by a guardian or other such representative. Fed. R. Civ. P. 55(b)(2). Default judgment also cannot be

4

entered against an individual in military service until after the court appoints an attorney to represent the defendant. *See* 50 U.S.C. App. § 521. Here, Plaintiffs have provided sufficient evidence demonstrating that Mr. Romero is not an infant, incompetent person, nor a person in the armed services. *See* Kerr Decl. ¶¶ 15-16 & Exs. 5-6. The Court, therefore, may consider entering a default judgment against Defendant.

Entry of default against a defendant, however, does not automatically entitle a plaintiff to a court-ordered default judgment. *See Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986) (affirming the district court's denial of default judgment despite the defendant's alleged failure to answer the complaint). The decision to grant or deny a motion for default judgment is at the discretion of the district court. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). In deciding whether to enter a default judgment, a federal court may consider the following "*Eitel"* factors:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). "In applying this discretionary standard, default judgments are more often granted than denied." *PepsiCo v. Triunfo-Mex, Inc.*, F.R.D. 431, 432 (C.D. Cal. 1999).

Upon an entry of default, the factual allegations of the plaintiff's complaint are assumed to be true, except those relating to damages. *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). *See also* Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."). A defendant, however, is not held to admit facts that are not "well-pleaded" or to admit conclusions of law. *Nishmatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Relief accompanying a default judgment is further constrained by the remedies sought in the complaint. *See* Fed. R. Civ. P. 54(c) ("A judgment by default shall not be different in kind from or exceed in

5

amount that prayed for in the [complaint]."); *see also Cal. Sec. Cans*, 238 F. Supp. 2d at 1175.

### C.  Application of the *Eitel* Factors

After assessing the *Eitel* factors, the Court finds that they weigh in favor of granting Plaintiffs' Motion For Entry of Default Judgment. Accordingly, the Court recommends that Plaintiffs' Motion be granted.

#### 1.  Prejudice to Plaintiffs

With respect to the first *Eitel* factor, the Court concludes that Plaintiffs will be significantly prejudiced if a default judgment is not entered in their favor. Without an entry of default judgment, Plaintiffs would be denied the right to judicial resolution of their claims and would likely be "without other recourse for recovery." *Cal. Sec. Cans*, 238 F. Supp. 2d at 177. Absent entry of default judgment, Plaintiffs also could not receive injunctive relief and Defendant's infringement could continue. *See Capitol Records v. Barrera*, No. C 06-07212 JSW, 2007 WL 1113949, at *2 (N.D. Cal. Apr. 13, 2007). As Defendant allegedly continues to engage in acts of infringement (Compl. ¶ 15), Plaintiffs would suffer substantial prejudice if the Court declined to enter a default judgment.

#### 2.  Sufficiency of the Complaint and the Merits of Plaintiffs' Substantive Claims

Plaintiffs have adequately stated and supported their claim of copyright infringement. Section 106 of the Copyright Act provides that "the owner of [a] copyright . . . has exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; . . . (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . . ." 17 U.S.C. § 106. The statute entitles the "legal or beneficial owner of an exclusive right under a copyright . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

A prima facie case of direct copyright infringement requires that a plaintiff establish: (1) ownership of the allegedly infringed material; and (2) that the alleged infringer violated at least one exclusive right granted to the copyright holders under 17 U.S.C. § 106. *See Marder v. Lopez*, 450

F.3d 445, 453 (9th Cir. 2006); *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001); *Barrera,* 2007 WL 1113949, at *3. Plaintiffs here have satisfied both elements of a copyright claim. They have alleged that they own the copyright registrations for the ten sound recordings listed in Exhibit A of the Complaint. Compl. ¶ 13. They have also provided copies of the copyright registrations for these recordings. Jaska Suppl. Decl., Exs. B-K. Plaintiffs also have demonstrated that Mr. Romero used an online media distribution system to download the Copyrighted Recordings and distribute them to the public or make them available for distribution to others. *See* Kerr Decl. ¶¶ 3-7; Compl. ¶ 13. The allegations and evidence are therefore sufficient to support a claim for copyright infringement.

### 3. The Sum of Money at Stake

The sum of money at issue in this action is not disproportionate or unreasonable. *See Barrera*, 2007 WL 1113949, at *3. Plaintiffs seek to recover the minimum amount of statutory damages for each of the ten alleged instances of infringement under 17 U.S.C. § 504(c) and costs incurred in bringing suit pursuant to 17 U.S.C. § 505. Mot. at 8, 13; 17 U.S.C. §§ 504(c), 505. While the Copyright Act allows for an award of attorneys' fees, Plaintiffs are only seeking to recover their costs. *See* 17 U.S.C. § 505. As Plaintiffs request only the minimum amount of statutory damages and costs, this factor also weighs in favor of granting Plaintiffs' Motion.

### 4. The Possibility of a Dispute of Material Facts

There is no apparent dispute concerning the material facts of this case. Defendant has failed to appear in the action, and because default has been entered, all well-pleaded allegations in the Complaint, except those relating to damages, are assumed to be true. *See Discovery Commc'ns, Inc. v. Animal Planet, Inc.*, 172 F. Supp. 2d 1282, 1288 (C.D. Cal. 2001). Furthermore, as noted above, Plaintiffs sufficiently alleged and supported the elements of a copyright infringement claim with evidence of both copyright ownership and acts of infringement.

### 5.  Whether Default was Due to Excusable Neglect

There is also no evidence in the record to suggest that default resulted from Defendant's excusable neglect. Upon discovering Mr. Romero's identity, Plaintiffs' counsel sent him a letter alerting him to the acts of infringement and advising him to contact Plaintiffs' representatives to resolve the matter before the initiation of litigation. Kerr Decl. ¶ 8. Defendant never responded. Kerr Decl. ¶ 9. As discussed above, Plaintiffs properly served Defendant with the Summons and Complaint on April 12, 2007 by substituted service. *See* Docket No. 6 (Summons); Kerr Decl. ¶ 10. Plaintiffs also sent Defendant a letter on May 14, 2007, notifying him that he was in default and urging Defendant to respond to the Complaint or to contact Plaintiffs' representatives. Kerr Decl. ¶ 12, Ex. 2. Defendant was also notified on May 25, 2007, that the Clerk of this Court had entered default against him. Docket No. 10; Kerr Decl. ¶ 13, Ex. 3. Despite service and notification, Defendant has not responded to Plaintiffs' Complaint or otherwise made an appearance before the Court. Accordingly, the Court finds that the default did not result from excusable neglect.

### 6.  Policy Favoring Decisions on the Merits

The federal courts prefer to decide cases on their merits when "reasonably possible." *Eitel*, 728 F.2d at 1472. This preference, however, is not dispositive. *See Kloepping v. Fireman's Fund*, No. C 94-2684, 1996 U.S. Dist. LEXIS 1786, at *10 (N.D. Cal. Feb. 13 1996). When a defendant fails to answer a plaintiff's complaint, a decision on the merits is "impractical, if not impossible." *Cal. Sec. Cans*, 238 F. Supp. at 1177. Therefore, "the preference to decide cases on the merits does not preclude a court from granting default judgment." *Kloepping*, 1996 U.S. Dist. LEXIS 1786, at *10. The Court, therefore, may enter default judgment against Defendant.

### D.  Relief Sought

Pursuant to Rule 54(c) of the Federal Rules of Civil Procedure, the relief requested in a motion for entry of default judgment may not exceed the remedies sought in the complaint. Fed. R. Civ. P. 54(c). Plaintiffs originally sought statutory damages for each infringement of the Copyrighted Recordings, costs, reasonable attorneys' fees and permanent injunctive relief. *See* Docket No. 1; Compl. ¶ 19. Plaintiffs are now seeking $7,500 in statutory damages, $480 in costs

8

and a permanent injunction. Mot. at 1. Plaintiffs have the burden of proving their damages. *See Cal. Sec. Cans*, 238 F. Supp. 2d at 1173.

### 1. Statutory Damages

The Copyright Act provides that a "copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Plaintiffs here have requested only the minimum amount of statutory damages - $750 for each of the ten acts of infringement listed in Exhibit A of Plaintiffs' Complaint.[3] The total amount of statutory damages sought is $7,500.

Under Section 504 of the Copyright Act, a plaintiff need not prove actual damages in order to receive an award of statutory damages. *See L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998), *cert. denied* 525 U.S. 1141 (1999) ("Because awards of statutory damages serve both compensatory and punitive purposes, a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by plaintiff. . . .") (quoting *Harris v. Emus Records* Corp., 734 F.2d 1329, 1335 (9th Cir. 1984)). Statutory damages under the Copyright Act are particularly appropriate in cases in which the "defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiff's actual damages." *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).

Here, the damages sought by Plaintiffs are reasonable and appropriate in light of the finding that at least ten of the Plaintiffs' Copyrighted Recordings were illegally downloaded and distributed. *See, e.g., Warner Bros. Records Inc. v. Novak*, 06-5342 (FLW), 2007 WL 1381748 (D.N.J. May 9, 2007) (awarding plaintiffs the minimum amount of statutory damages for each instance of infringement, costs and injunctive relief); *Barrera*, 2007 WL 1113949 (same); *Priority Records LLC v. Rodriguez*, CV F 06-0484 AWI LJO, 2007 WL 120033 (E.D. Cal. Jan. 11, 2007) (same); *Sony Music Entm't Inc. v. Elias*, CV03-6387DT (RCX), 2004 WL 141959 (C.D. Cal. Jan. 20, 2004)

---

[3] Plaintiffs are not seeking damages for any of the Copyrighted Recordings listed in Exhibit B.

9

1  (same). Accordingly, the Court recommends that Plaintiffs be awarded $7,500 in statutory damages
2  as requested in the Complaint and Motion.

### 2. Costs

Rule 54 of the Federal Rules of Civil Procedure states that "[e]xcept when express provision therefor is made either in statute of the United States or in these rules, costs other than attorneys' fees shall be allowed as of course to the prevailing party. . . ." Fed. R. Civ. P. 54(d)(1). Entry of default judgment constitutes success on the merits. *See Sony Music Entm't v. Global Arts Prods.*, 45 F. Supp. 2d 1345, 1347 (S.D. Fla. 1999). Plaintiffs have incurred cost of $350 for filing the lawsuit and $130 for service of process. Kerr Decl. ¶ 17 (filing fee); Jaska Suppl. Decl., ¶ 3 & Ex. A (service of process fee). Local Rule 54-3(a) specifically allows the Court to award such expenses. N.D. Cal. Civ. R. 54-3(a). The Court therefore recommends that Plaintiffs receive $480 in costs.

### 3. Injunctive Relief

Plaintiffs also request that the Court issue a permanent injunction to enjoin Defendant's copyright infringement. Specifically, Plaintiffs request that the Court issue the following injunction:

> Defendant shall be and hereby is enjoined from directly or indirectly infringing Plaintiffs' rights under federal or state law in the Copyrighted Recordings and any sound recording, whether now in existence or later created, that is owned or controlled by Plaintiffs (or any parent, subsidiary, or affiliate record label of Plaintiffs) ("Plaintiffs' Recordings"), including without limitation by using the Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiffs' Recordings, to distribute (i.e., upload) any of Plaintiffs' Recordings, or to make any of Plaintiffs' Recordings available for distribution to the public, except pursuant to lawful license or with the express authority of Plaintiffs. Defendant also shall destroy all copies of Plaintiffs' Recordings that Defendant has downloaded onto any computer hard drive or server without Plaintiffs' authorization and shall destroy all copies of these downloaded recordings transferred onto any physical medium or device in Defendant's possession, custody, or control.

Mot. at 8-9. This is the same injunction prayed for in the Complaint. *See* Docket No. 1.

The Copyright Act authorizes the Court to grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). In general, evidence of copyright infringement and the threat of future violations is sufficient to warrant the granting of a permanent injunction. *Sega Enters. Ltd. v. Maphia*, 948 F. Supp. 923, 940

(N.D. Cal. 1996) (finding that continued access to the equipment that allowed defendant to illegally download and distribute game programs constituted a threat of future copyright violations); *see also MAI Sys. Corp. v. Peak Computer, Inc.*, 991 F.2d 511, 520 (9th Cir. 1993) (finding that a computer servicing company that maintained computers in its inventory with protected software presented a threat of future copyright violations and warranted an injunction); *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006) (granting a permanent injunction upon entry of default judgment in a copyright infringement action).

The Court may consider four factors in determining whether to issue a permanent injunction: (1) irreparable harm; (2) success on the merits; (3) a balancing of competing claims of injury to the parties; and (4) consideration of the public interest. *Global Arts Prods.*, 45 F. Supp. 2d at 1347. "Injunctive relief is a traditional remedy for copyright infringement and is especially favored where there is a history of continuing infringement and a substantial threat of continued infringement. In such a case, a district court ought not only to issue a broad permanent injunction protecting present works, but can protect works not yet created." *Id* (citations omitted).

The elements required for issuing a permanent injunction are satisfied here. Evidence of copyright infringement is presumed to give rise to irreparable harm. *See Elektra Entm't Group Inc. v. Bryant*, No. CV 03-6381GAF (JTLX), 2004 WL 783123, at *17 (C.D. Cal. Feb. 13, 2004); *see also Micro Star v. Formgen Inc.*, 154 F.3d 1107, 1109 (9th Cir. 1998) ("[I]n a copyright infringement claim, a showing of a reasonable likelihood of success on the merits raises a presumption of irreparable harm."). The entry of default against Defendant establishes success on the merits for Plaintiffs and therefore irreparable harm is presumed. *See Rodriguez*, 2007 WL 120033, at *5.

Plaintiffs also have adequately demonstrated that they will suffer irreparable harm if Defendant is not permanently enjoined. Defendant's use of an online media distribution system to download and distribute copyrighted materials leaves Plaintiffs' Copyrighted Recordings vulnerable to "massive, repeated, and worldwide infringement." *Twentieth Century Fox*, 438 F. Supp. 2d at 1073. "When digital works are distributed via the internet . . . every downloader who receives one of the copyrighted works from Defendant is in turn capable of also transmitting perfect copies of the

11

works. Accordingly, the process is potentially exponential rather than linear, threatening virtually unstoppable infringement of the copyright." *Id.* at 1073 n.2. Furthermore, Defendant's failure to appear in this action provides the Court with no assurance that the Defendant's infringement will not continue. *See Jackson*, 255 F. Supp. 2d at 1103. The Court also cannot discern any detriment to Defendant that would outweigh the harm to Plaintiffs if an injunction were issued.

The public interest also weighs in favor of granting a permanent injunction in this case. Injunctions issued pursuant to Section 502 of the Copyright Act serve the public interest by upholding copyright protections. *See Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993). As noted by the Third Circuit, "the public interest can only be served by upholding copyright protections and . . . preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.* 714 F.2d 1240, 1255 (3d Cir. 1983). Accordingly, the Court finds that permanent injunctive relief is appropriate in this case.

Rule 65 of the Federal Rules of Civil Procedure requires that "[e]very order granting an injunction . . . shall set forth the reasons for its issuance; shall be specific in terms; [and] shall describe in reasonable detail . . . the act or acts sought to be restrained. . . ." Fed. R. Civ. P. 65(d). Generally, "an injunction must be narrowly tailored to remedy only the specific harms shown by the plaintiffs rather than to enjoin all possible breaches of the law. " *Iconix, Inc. v. Tokuda*, 457 F. Supp. 2d 969, 998-1002 (N.D. Cal. 2006) (citing *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004). As recently noted by the Court in a nearly identical action with plaintiffs seeking the same injunction as requested here, the form and scope of Plaintiffs' proposed injunction is in large part reasonable and appropriate.[4] *See* 06-04913 JSW (JCS) *Warner Bros. Records Inc. v. Pinheiro.*

Plaintiffs justifiably seek to prohibit the infringement not only of Plaintiffs' existing copyrighted recordings, but also future copyrighted recordings not yet created. Mot. at 12. An injunction protecting against infringement of future copyrighted works is permitted, and it is

---

[4] The Court acknowledges that judges both within and outside of this District have come to differing conclusions with respect to the specific language of permanent injunctions issued in this type of copyright infringement action.

12

appropriate to grant such an injunction upon entry of default judgment. *Universal City Studios v. Martinez,* No. 06-01128 OWW-SMS, 2007 WL 587185, at *5 (E.D. Cal. Feb. 26, 2007) (citing *Princeton Univ. Press v. Michigan Document Serv. Inc.*, 99 F.3d 1381, 1392-93 (6th Cir. 1996)) ("The weight of authority supports the extension of injunctive relief to future works."); s*ee also Global Arts Prods.*, 45 F. Supp. 2d at 1347-48 (granting a permanent injunction protecting both current and future copyrighted works). It is also proper upon a showing of infringement to order the destruction of all copies or phonorecords made or used in violation of the copyright owner's exclusive rights. 17 U.S.C. § 503(b); *Martinez*, 2007 WL 587185, at *5.

Plaintiffs are also entitled to an injunction that covers the Copyrighted Recordings and any sound recordings owned or controlled by Plaintiffs or to which Plaintiffs are the licensees of exclusive rights. *See Capitol Records, Inc. v. Schmidt*, No. 06-5433 SC, 2007 WL 155577, at *5 (N.D. Cal. June 7, 2007) (citing *Pickler Int'l Corp. v. Imaging Equip. Serv. Inc.*, 931 F. Supp. 18, 45 (D. Mass. 1995) ("[W]hen . . . there has been a history of copyright infringement which persuades the court that there is a threat of future violations, an injunction may properly be entered which applies not only to the works as to which infringement has already been adjudicated, but also to any other works presently owned by plaintiff.") (internal quotation marks omitted)).

Similarly, the injunction may extend to sound recordings owned or controlled by Plaintiffs and their parent, subsidiary, or affiliate record labels. *See Warner Bros. Records Inc. v. Hughes*, No. 06-3112, 2007 WL 315356, at *2 (C.D. Ill. Jan. 31, 2007) (citing *Chicago Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 632 (7th Cir. 2003)). An injunction which did not include Plaintiffs' related companies would be rendered ineffective in the event that Plaintiffs undertook any reorganization that transferred title to the copyrights to another of their related entities.

Plaintiffs' proposed injunction is overly broad, however, in that it seeks to enjoin the infringement of Plaintiffs' rights under both federal and state law. Compl. ¶ 17. Plaintiffs' Complaint alleges only federal claims pursuant to the Copyright Act and no state law claims have been adjudicated. This provision of the proposed injunction is therefore not narrowly tailored to the specific harms perpetrated by Defendant against Plaintiffs. *See Barrera*, 2007 WL 1113949 at *6; *Malacara*, 2007 U.S. Dist. LEXIS 13421, at *19-20. Moreover, the Copyright Act preempts any

13

state law copyright claims, largely nullifying the protection afforded by enjoining infringement of Plaintiffs' rights under state law.[5] *See Laws v. Sony Music Entm't*, 448 F.3d 1134, 1137 (9th Cir. 2006). Accordingly, the injunction should only enjoin Defendant from infringing Plaintiffs' rights under federal law.

## IV. RECOMMENDATION

The Court RECOMMENDS that:

1) Plaintiffs' Motion for Entry of Default Judgment Against Defendant Julian Romero be GRANTED;

2) The Clerk be directed to enter judgment for Plaintiffs and against Defendant in the amount of $7,500 in statutory damages and $480 in costs; and

3) The Clerk be directed to enter judgement for Plaintiffs and against Defendant enjoining Defendant from directly or indirectly infringing Plaintiffs' rights under federal law in the following copyrighted sound recordings:

- "Longview," on album "Dookie," by artist "Green Day" (SR# 185-457);
- "Ether," on album "Stillmatic," by artist "Nas" (SR# 305-698);
- "Sweet Lady," on album "Tyrese," by artist "Tyrese" (SR# 237-788);
- "All or Nothing," on album "O-Town," by artist "O-Town" (SR# 294-872);
- "Until We Rich," on album "War & Peace: Vol. 2," by artist "Ice Cube" (SR# 287-151);
- "Zero," on album "Mellon Collie and the Infinite Sadness," by artist "Smashing Pumpkins" (SR# 183-904);
- "Cold Day In July," on album "Fly," by artist "Dixie Chicks" (SR# 275-086);
- "Dreams," on album "Rumours," by artist "Fleetwood Mac" (N39857);
- "Keep On," on album "Bad As I Wanna B," by artist "MC Lyte" (SR# 225-726);
- "Housewife," on album "2001," by artist "Dr. Dre" (SR# 277-983);

---

[5] At oral argument, Plaintiffs' counsel asserted that the reference to state law is justified because federal copyright law does not apply before 1972. The Court is not persuaded by this argument, however, because all of the copyright registrations at issue in this case were issued after 1972, and because violations of state law are not asserted in the complaint. *See* Jaska Suppl. Decl., Exs. B-K.

14

and in any sound recording, whether now in existence or later created, that is owned or controlled by Plaintiffs (or any parent, subsidiary, or affiliate record label of Plaintiffs) ("Plaintiffs' Recordings"), including without limitation by using the Internet or any online media distribution system to reproduce (i.e., download) any of Plaintiffs' Recordings, to distribute (i.e., upload) any of Plaintiffs' Recordings, or to make any of Plaintiffs' Recordings available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiffs.  Defendant also shall destroy all copies of Plaintiffs' Recordings that Defendant has downloaded onto any computer hard drive or server without Plaintiffs' authorization and shall destroy all copies of those downloaded recordings transferred onto any physical medium or device in Defendant's possession, custody, or control.

Dated: August 14, 2007

_____
JOSEPH C. SPERO
United States Magistrate Judge

15